UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

HECTOR SAMUEL ROSADO-ROSARIO,

    Plaintiff,

v.                                                                                       Case No.: 8:24-cv-1933-LSG

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

_____/

## ORDER

    The plaintiff Hector Samuel Rosado-Rosado-Rosario appeals the denial of his

claim for Social Security Disability Insurance ("SSDI") benefits. Docs. 1, 13.

Because I find that the Administrative Law Judge's decision lacks substantial

evidentiary support and fails to comply with applicable law, I reverse the ALJ's

decision and remand this case for further proceedings.

### I.    Procedural Background

    In January 2023, Rosado-Rosario applied for a period of disability and

disability insurance benefits. Doc. 13 at 1; Tr. 20. Rosado-Rosario alleged that his

disability began on December 13, 2022. Doc. 13 at 1; Tr. 20. The Commissioner

denied Rosado-Rosario's claims initially and on reconsideration. Tr. 103, 125.

Rosado-Rosario requested an administrative hearing, which occurred on March 14,

2024. Tr. 20, 38, 128–30. Rosado-Rosario appeared and testified. Tr. 40, 48–51, 52,

54–69. The ALJ's decision after the hearing was unfavorable. Tr. 14–33. Rosado-Rosario appealed the ALJ's decision to the Appeals Council. Tr. 9–13. The Appeals Council found no error in the ALJ's decision and informed Rosado-Rosario that the decision would be final pending appellate review. Tr. 1–8. Rosado-Rosario timely filed a complaint in this Court, Doc. 1, and the case is ripe review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Factual Background and the ALJ's Decision

Born in 1992, Rosado-Rosario was thirty years old when his alleged disability began. Tr. 31, 40, 81. His impairments include lumbar spine degenerative disc disease, atrial fibrillation, migraine headaches, and obesity. Tr. 22. Rosado-Rosario has a high school education and some college credit. Tr. 31, 48. He received certification as a paramedic. Tr. 49. Rosado-Rosario served in the military from May 2021 to December 2022, when he retired from service following an injury. Tr. 47–48. His occupational history includes working as paramedic, outside deliverer, a warehouse worker, and a truck driver. Tr. 31.

The ALJ concluded that Rosado-Rosario satisfies the insured status requirements of the Social Security Act through December 31, 2027, and that he had not been engaged in any substantial gainful activity since his alleged onset date of December 13, 2022, Tr. 26. After a hearing and reviewing the evidence, the ALJ determined that Rosado-Rosario has severe impairments, including lumbar spine degenerative disc disease, atrial fibrillation, migraine headaches, and obesity. Tr. 22. Nonetheless, the ALJ determined that Rosado-Rosario suffers no impairment or

2

combination of impairments that "meets or medically equals" the severity of a listed impairment in 20 C.F.R. Part 104, Subpart P, Appendix 1. Tr. 25. The ALJ concluded that Rosado-Rosario has a residual functional capacity to perform "light work" as defined in 20 C.F.R. § 404.1567(b) with the exception that "he can occasionally lift and carry 20 pounds and frequently and carry lift 10 pounds," "stand, walk, and sit for about 6 hours, each, in an 8-hour workday with normal and customary breaks," "frequently climb ramps and occasionally climb stairs," "occasionally stoop, crouch, kneel, and crawl, and "reach and handle bilaterally." Tr. 25. The ALJ determined that, based on his RFC, Rosado-Rosario should "avoid climbing ladders, ropes, and scaffolds," "avoid concentrated exposure to extreme cold, vibration, and loud noise . . . working around very bright lights such as outdoor work . . . avoid even moderate exposure to hazardous or moving industrial machinery, unprotected heights, and noxious fumes." Tr. 25. The ALJ further limited Rosado-Rosario to "noncomplex tasks and instructions" with "occasional interaction with the public." Tr. 25.

In formulating Rosado-Rosario's residual functional capacity, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," medical opinions, and prior administrative findings. Tr. 25. *See* Tr. 25–31. The ALJ found that Rosado-Rosario's medically determinable impairments "could reasonably be expected to cause the alleged symptoms." Tr. 29. However, the ALJ concluded that Rosado-Rosario's statements concerning the intensity, persistence, and limiting

effects were "not entirely consistent with the medical evidence and other evidence in the record[.]" Tr. 29. The ALJ explains that, although the record supports Rosado-Rosario's migraine headache impairment, the "same evidence supports that [the migraine] impairment was not disabling for the entire period at issue." Tr. 28. The ALJ similarly found that, despite a history of PTSD, depression, and anxiety, Rosado-Rosario had no inpatient psychiatric hospitalizations and no involuntary commitments. Tr. 28. The ALJ determined that Rosado-Rosario's "mental health appears to be managed with medications and psychotherapy appointments." Tr. 28.

The ALJ found that Rosado-Rosario was unable to perform his past relevant work. Tr. 31. Based on the testimony of a vocational expert, the ALJ concluded that Rosado-Rosario could return to work and perform the functions of a "warehouse checker," "office helper," and a "mailroom clerk." Tr. 32. Thus, based on Rosado-Rosario's age, education, work experience, residual function capacity, and the testimony of a vocational expert, the ALJ determined that Rosado-Rosario is not disabled. Tr. 32–33.

### III.    Standard of Review

Entitlement to SSDI benefits requires a "disability," meaning the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" likely to result in death, lasting for at least twelve months, or expected to last more than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" means a condition resulting from "anatomical, physiological, or psychological abnormalities . . . demonstrable by

4

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C.
§§ 423(d)(3); 1382c(a)(3)(D).

Social Security Administration ("SSA") regulations establish a five-step
"sequential evaluation process" to determine whether a person is disabled. 20 C.F.R.
§§ 404.1520(a), 416.920(a). The ALJ must determine whether the claimant (1) is
engaged in "substantially gainful activity," (2) has a severe impairment, (3) has a
severe impairment that "meets or equals" the medical criteria of 20 C.F.R. Part 404,
Subpart P, Appendix 1, (4) can perform the claimant's past relevant work, and
(5) can perform other work in the national economy in view of the claimant's age,
education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant
may obtain benefits only if unable to perform other work. 20 C.F.R. §§ 404.1520(g),
416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

An order affirming the Commissioner's decision is warranted if substantial
evidence and applicable law support the decision. 42 U.S.C. §§ 405(g), 1383(c)(3);
*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations
omitted). "Substantial evidence" means that which "a reasonable mind might accept
as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971);
*Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Commissioner's factual
findings receive deference, but the legal conclusions receive "close scrutiny." *Keeton
v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

"When deciding whether the ALJ's decision is supported by substantial
evidence, the court must view the record as a whole, considering evidence favorable

and unfavorable to the Commissioner." *Hill v. Comm'r of Soc. Sec.*, No. 2:24-CV-64-KCD, 2024 WL 4719493, at *1 (M.D. Fla. Nov. 8, 2024) (citing *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)). A reviewing court may not find facts, weigh evidence, or substitute its judgment for the ALJ's, even if the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). However, the Commissioner's failing either to apply the law correctly or to provide sufficient legal analysis mandates reversal. *Keeton*, 21 F.3d at 1066. Thus, the scope of review is limited to determining whether substantial evidence supports the Commissioner's findings and whether the Commissioner applied the correct legal standard. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.    Analysis

At step three of the "sequential evaluation process," the ALJ considers whether the claimant's impairments equal the severity of a listed impairment in 20 C.F.R. Part 404, subpart P, Appendix 1. If an impairment "meets or medically equals" a listed impairment, the claimant is presumptively disabled. 20 C.F.R. § 404.1525(a). The claimant bears the burden of proving the existence of a listed impairment. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991); *Martel v. Colvin*, No. 2:24-cv-254-JRK, 2025 WL 259344, at *3 (M.D. Fla. Jan. 22, 2025). To "meet or equal" a listed impairment, the diagnosis of an impairment is not enough; a claimant must demonstrate a diagnosis provided for in the listings and submit medical records satisfying the criteria described in the listing. *Wilson v. Barnhart*, 284

F.3d 1219, 1224 (11th Cir. 2002). At a minimum, the claimant's medical records must show an impairment of equal severity and duration. *Id.*

However, "[s]evere impairments do not necessarily result in specific functional limitations." *Owens v. Colvin*, No. 3:15-cv-409, 2015 WL 12856780, at *2 (M.D. Fla. Oct. 15, 2015). "If no specific functional limitations from a severe impairment exist, the ALJ need not include a corresponding limitation for that impairment in the [residual functional capacity]." *Id.*; *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x. 260, 263–64 (11th Cir. 2009) (affirming the Commissioner's decision because the claimant's obesity impairment "was ultimately determined not to result in any specific functional limitations."); *Davis–Grimplin v. Comm'r, Soc. Sec.*, 556 F. App'x. 858, 863 (11th Cir. 2014). Further, the ALJ need not cite each listed impairment that he considered. *Gray ex rel. Whymss v. Comm'r of Soc. Sec.*, 454 F. App'x. 748, 750 (11th Cir. 2011). An ALJ must, at a minimum, provide enough for a meaningful review of his analysis and conclusion. *Gray ex rel. Whymss*, 454 F. App'x at 750; *Keeton*, 21 F.3d at 1066.

The ALJ determined Rosado-Rosario's residual functional capacity at steps three and four. 20 C.F.R. §§ 404.1520(a), 416.920(a); Tr. 23–31. A person's "residual functional capacity is the most [the person] can still do despite [the person's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). This assessment evaluates "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," which means "8 hours a day, for 5 days a week, or an equivalent work schedule." Social Security Ruling ("SSR") 96-8P,

7

1996 WL 374184, *1 (S.S.A. Jul. 2, 1996). An ALJ must determine a claimant's

residual functional capacity by considering all relevant medical and other evidence,

including evidence as to what a person can do in a work setting despite physical or

mental limitations caused by the person's impairments and related symptoms. *Jensen*

*v. Comm'r of Soc. Sec.*, No. 21-13324, 2022 WL 2663585, at *3 (11th Cir. July 11,

2022); *Semidey v. Kijakazi*, No. 8:20-cv-2310-AEP, 2022 WL 4464840, at *3 (M.D.

Fla. Sept. 26, 2022) (citing 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)). To determine

a person's residual functional capacity, the ALJ should evaluate (1) all medical

opinions, together with the other record evidence and (2) all medically determinable

impairments, including those that are not severe, and the total limiting effects of

each. *Id.* (citing 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e),

416.945(a)(2) & (e)).

 Rosado-Rosario argues on appeal that the ALJ erred by failing to consider the

total limiting effect of his migraine headache impairment by including no headache-

related limits in Rosado-Rosario's residual functional capacity.  Doc. 13. Rosado-

Rosario further argues that the ALJ failed to comply with the SSA's policy for the

consideration of "nonsevere mental impairments." Tr. 13. The Commissioner argues

in response that the ALJ properly considered the evidence when evaluating Rosado-

Rosario's migraine headache and mental impairments and that substantial evidence

supports Rosado-Rosario's residual functional capacity. Doc. 17.

**A. The ALJ erred in assessing Rosado-Rosario's residual function capacity and limitations by failing to evaluate his headaches under SSR 19-4p.**

Although no listing applies directly to migraines or headache disorders, the Social Security Rulings explain that an ALJ "may find that a primary headache disorder, alone or in combination with another impairment(s), medically equals a listing." SSR 19-4p, 2019 WL 4169635 (Aug. 26, 2019). Social Security Ruling SSR 19-4p instructs that an ALJ should evaluate headache disorders under listing 11.02. *Id*. Thus, under SSR 19-4p, "[a] migraine impairment can be functionally equivalent to Listing 11.02B if severe headaches or migraines occur 'at least once a week for three consecutive months despite adherence to prescribed treatment.'" *Rice*, 2024 WL 4993583, at *5–*6. To analyze a claimant's headache disorder under the criteria of Listing 11.02B, the ALJ must consider

> (1) a medical source's description of Plaintiff's migraines, including their duration, intensity, and accompanying symptoms, (2) the frequency which with Plaintiff's migraines occurred, (3) whether Plaintiff adhered to his prescribed treatment, (4) whether Plaintiff suffered from any side effects of treatment, and (5) whether the migraines interfered with Plaintiff's with activity during the day.

*Rice*, 2024 WL 4993583, at *5 (summarizing SSR 19-4p, 2019 WL 4169635, at *7). Similarly, a migraine impairment may be functionally equivalent to Listing 11.02D if a claimant's migraines occur at least once every two weeks for at least three consecutive months despite treatment. *Id*. at 6. Thus, to analyze the medical equivalence of a claimant's migraines to listing 11.02D, the ALJ must consider the frequency of the migraines, the claimant's adherence to any prescribed treatment, and "whether the migraines caused the plaintiff to have a marked limitation in

physical functioning; understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself." *Rice*, 2024 WL 4993583, at *6 (quoting SSR 19-4p, 2019 WL 4169635, at *7); *Martel*, 2025 WL 259344, at *3. If a claimant's migraines or headache disorder does not medically equal a listing, the ALJ must, at a minimum, "assess the [claimant's RFC]" and "consider and discuss the limiting effects" of the headaches—such as pain and light sensitivity—when doing so. SSR 19-4p, 2019 WL 4169635, at *7.

Here, the ALJ references SSR 19-4p specifically when evaluating the record evidence about Rosado-Rosario's migraine headaches. Tr. 27–28. However, the ALJ did not evaluate Rosado-Rosario's migraines adequately in accord with SSR 19-4p. The ALJ failed to evaluate whether Rosado-Rosario's migraines medically equaled the criteria of Listing 11.02B or 11.02D. As a result, I cannot conduct a meaningful review of the ALJ's subsequent findings, including the RFC determination. *See Martel*, 2025 WL 259344, at *4.

At step three, the ALJ explains that Rosado-Rosario suffers from the severe, medically determinable impairment of migraine headaches. Tr. 22. Along with the severe impairments of lumbar spine degenerative disc disease, atrial fibrillation, and obesity, Rosado-Rosario's migraine headache impairment "significantly limit[s] the ability to perform basic work activities as required by SSR 85-28." Tr. 23. But ultimately, the ALJ concludes that Rosado-Rosario "does not have an impairment or combination of impairments that meets or medically equals the severity of" a listing.

10

Tr. 25. To reach that conclusion, the ALJ explains that he gave "particular consideration to [Rosado-Rosario's] physical impairments when compared to the requirements of Listings" for musculoskeletal disorders and the cardiovascular system. Tr. 25. The ALJ did not mention a listing for migraine headaches. The ALJ then assessed Rosado-Rosario's RFC after "careful consideration of the entire record" and consideration of "all symptoms and the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." Tr. 25.

When discussing Rosado-Rosario's headaches, the ALJ says that he "has not ignored the guidance in SSR 19-4p" and explains that Rosado-Rosario received treatment for migraine headaches and was testing for seizures. Tr. 27.[1] The ALJ found that while Rosado-Rosario's medically determinable impairments could reasonably be expected to cause his alleged symptoms, Rosado-Rosario's statements "concerning the intensity, persistence and limiting effects" of his symptoms are not consistent with evidence. Tr. 29. However, the ALJ describes nowhere whether he considered records or testimony about the frequency or severity of Rosado-Rosario's

---

[1] The ALJ discusses treatment notes that indicate Rosario suffered a "hard landing" during an airborne operation in 2022 and was diagnosed with a "mild" concussion as a result. Tr. 27. Rosario received "work duty limitations" because of his concussion, but solely for his recovery period. Tr. 27. The ALJ further discusses Rosario's continued treatment for his recurring headaches in 2023, and he received a neurology evaluation from the VA. Tr. 27. The VA neurologist diagnosed Rosario with "chronic daily headaches tension type/migraines without aura." Tr. 27. In addition to his treatment at the VA, Rosario was hospitalized twice in June 2023 after a "near syncope" episode, which led to a diagnosis of atrial fibrillation. Tr. 27. Treatment notes indicate that Rosario underwent testing to determine if the syncope episodes were seizures but a July 9, 2023, CT scan and EEG test both came back normal with "no epileptiform features present." Tr. 28.

11

headaches when determining whether Rosado-Rosario suffers from a listing-level impairment or when determining Rosado-Rosario's residual functional capacity.

SSR 19-4p specifically delineates how to evaluate a headache disorder. No single factor provided for in listing 11.02 is determinative; the evaluation process requires consideration of all requisite criteria. *See* SSR 19-4p, 2019 WL 4169635, at *7. To meet or medically equal a listing, Rosado-Rosario needed only to show that he suffered a severe headache once a week for three months despite medical treatment. *See* SSR 19-4p, 2019 WL 4169635, at *7. Here, Rosado-Rosario testified that he suffers from headaches daily and severe migraines "a couple of times a month," which can last from three hours to three days. Tr. 58–59. The medical record includes provider notes and assessments that Rosario suffered from and was diagnosed with migraine headaches that occurred two to four times per week and that Rosario received prescription medication to help relieve symptoms. Tr. 581, 609–10, 971, 1170, 1180, 1184, 1224, 1228.

The ALJ's decision provides no discussion about Rosado-Rosario's headache frequency, duration, or severity in accord with SSR 19-4p. An ALJ must "consider all relevant evidence in the case and all of a claimant's medically determinable impairments, including those that are not severe when making [a residual functional capacity] determination." *Walbush v. Comm'r of Soc. Sec.*, No.: 8:23-cv-881-DNF, 2024 WL 3084337, at *4 (M.D. Fla. Jun. 21, 2024). Although the residual functional capacity includes a limitation that Rosado-Rosario should "avoid working around very bright lights" and "noxious fumes," the ALJ does not establish any connection

12

between these limitations and Rosado-Rosario's migraines. The ALJ similarly fails

to consider or evaluate other severe symptoms that Rosado-Rosario reported,

including nausea and vomiting, having to lie down in dark rooms, insomnia, and

pain. The ALJ provides only an overview of Rosado-Rosario's migraine treatment

from 2022 to 2023. Tr. 28. At no point does the ALJ discuss "the location, duration,

frequency, and intensity" of Rosado-Rosario's migraines; "the type, dosage,

effectiveness, and side effects of any medication or other treatment" Rosado-Rosario

received for his migraines; or other factors concerning Rosado-Rosario's limitations.

"[T]here is no rigid requirement that the ALJ specifically refer to every piece

of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection

which is 'not enough to enable [the district court] to conclude that [the ALJ]

considered [claimant's] medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d

1206, 1212 (11th Cir. 2005) (citation omitted). The ALJ's blanket statement that he

considered SSR 19-4p and found no equivalency is insufficient. *See Keeton*, 21 F.3d at

1066. The ALJ thus failed to evaluate whether Rosado-Rosario's migraine headache

impairment met or medically equaled a listing, which impedes my review of the

ALJ's residual functional capacity determination. *See* SSR 19-4p, 2019 WL 4169635,

at *7; *Martel*, 2025 WL 259344, at *4 ("[T]he balance of the ALJ's findings on the

matter does not allow for meaningful review of the step three severity requirement or

the ALJ's later RFC findings."); *Rice*, 2024 WL 4993583, at *6. Because the opinion

fails to show that the ALJ complied with SSR 19-4p, I cannot determine whether the

ALJ properly considered the evidence of Rosado-Rosario's migraines. *See Morrison v.*

*Comm'r of Soc. Sec.*, 660 F. App'x 829, 834 (11th Cir. 2016) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review."); *Martel*, 2025 WL 259344, at *4. Therefore, I cannot determine whether substantial evidence supports the ALJ's decision. *See* 42 U.S.C. § 405(g); *Gray ex rel. Whymss*, 454 F. App'x at 750; *Martel*, 2025 WL 259344, at *4. The ALJ's conclusory reasoning and failure to fully evaluate Rosado-Rosario's migraine symptoms require reversal and remand of the decision. *See Martel*, 2025 WL 259344, at *3–4.

B.  **Rosado-Rosario's remaining issues.**

Rosado-Rosario alleges that the ALJ failed to account for Rosado-Rosario's non-severe mental impairments his residual functional capacity. Doc. 13. The ALJ's reconsideration of Rosado-Rosario's headache disorder on remand may affect this remaining issue. For that reason, discussion of the issue is unnecessary. *See Demenech v. Sec. of the Dep't of Health and Hum. Servs.*, 913 F.2d 882, 884 (11th Cir. 1990); *Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Soto v. Dudek,* No. 6: 24-cv-87-JRK, 2025 WL 683683, at *1 (M.D. Fla. Mar. 4, 2025).

## V.      Conclusion

Accordingly, the Commissioner's decision is **REVERSED** and **REMANDED** under 42 U.S.C. § 405(g) to the Commissioner for further proceedings. The Clerk is directed to enter judgment for Rosado-Rosario and against the Commissioner and to close the case.

**ORDERED** in Tampa, Florida, on the 22nd day of August, 2025.


LINDSAY S. GRIFFIN
United States Magistrate Judge

15